UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LUCILLE A. REMINGTON,<br>    *Plaintiff*,<br><br>v.<br><br>FINANCIAL RECOVERY SERVICES,<br>INC., *et al.*,<br>    *Defendants*. | No. 3:16-cv-865 (JAM) |

### RULING GRANTING DEFENDANTS' MOTION TO DISMISS

Plaintiff brings this action under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, on grounds that she received a debt collection letter that made reference to possible tax consequences if she were to settle an outstanding debt. Defendants have moved to dismiss plaintiff's FDCPA complaint for lack of standing and failure to state a claim upon which relief can be granted. I conclude that plaintiff has standing, but that the words in this debt collection letter are not actionable, because they are not false, deceptive, or misleading.

### BACKGROUND

Defendant Financial Recovery Services, Inc. (FRS), a debt collector, mailed plaintiff a letter in an attempt to collect a personal credit card debt in the amount of $822.39. Doc. #1. In the letter, FRS offered plaintiff three settlement options to pay off the debt, and further noted: "This settlement may have tax consequences. Please consult your tax advisor." *Id*. at ¶¶ 9, 10.

Plaintiff has filed this lawsuit under the FDCPA, alleging that the letter's reference to potential tax consequences is false, deceptive, and misleading—that it "suggests that the consumer could be in trouble with a tax authority if she did not pay in full rather than settle," *id*. at ¶ 20, that it "creates a false sense of urgency," *id*. at ¶ 21, and that it "is meant to make the consumer nervous, worried, or upset," *id*. at ¶ 22. Plaintiff also alleges that the reference to

1

potential tax consequences from a settlement is a "ploy to get the consumer to pay the account instead of a [*sic*] paying for tax advice." *Id*. at ¶ 19.

## DISCUSSION

Congress enacted the FDCPA in light of "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). The statute's stated purpose is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

Among other provisions of the statute, the FDCPA broadly provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The statute lists many examples of such prohibited conduct. *Id.*[1] The FDCPA further provides for a civil cause of action for any violations and for the award of attorney's fees. 15 U.S.C. § 1692k.

Defendants have moved to dismiss plaintiff's suit for lack of standing and failure to state a claim. *See* Doc. #9. I will address each in turn.

*Standing*

Article III of the Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. The reason for the case-or-controversy limitation is to restrain the federal courts from enmeshing themselves in deciding abstract and advisory

---

[1] The FDCPA also prohibits harassment, abuse, and other unfair practices. *See* 15 U.S.C. §§ 1692d, 1692f. Plaintiff here is represented by experienced counsel who has chosen to allege solely a violation of the FDCPA's prohibition against false, deceptive, or misleading practices under 15 U.S.C. § 1692e. *See* Doc. #1 at ¶ 24.

questions of law. Accordingly, any federal court plaintiff must have case-or-controversy "standing" to assert a claim—specifically, "a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)); *see also E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 449–50 (2d Cir. 2014).

An injury in fact must be both "concrete and particularized," as well as "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). An injury is concrete if it "actually exists," though it need not be a "tangible" injury (*e.g.*, incurring damages or suffering a physical injury), because Congress may create "intangible" injuries through statute. *See id.* at 1549. An injury is particularized if a plaintiff shows that a defendant's "actions (or inactions) injured her in a way distinct from the body politic." *Strubel v. Comenity Bank*, 842 F.3d 181, 188 (2d Cir. 2016).

Turning first to particularity, the complaint sufficiently demonstrates that defendants' debt collection letter—if violative of the FDCPA—"injured [plaintiff] in a way distinct from the body politic." *Strubel*, 842 F.3d at 188. Although defendants contend that the complaint only states that the *letter* creates a "false sense of urgency"—not that "the letter caused *her* to suffer harm," Doc. #16 at 2, a fair import of the complaint is that plaintiff read the letter and felt harmed by it. The letter thus affected plaintiff "in a personal and individual way" and any injury produced thereby is not merely a "vehicle for the vindication of the value interests of concerned bystanders or the public at large." *Strubel*, 842 F.3d at 191.

3

The complaint also sufficiently alleges an injury in fact. In *Spokeo*, the Supreme Court explored whether a "bare procedural violation, divorced from any concrete harm," such as violation of a technical requirement under a consumer protection law, could satisfy the injury-in-fact requirement. 136 S. Ct. at 1546, 1549. Here, however, the harm alleged by plaintiff is not harm resulting from a bare procedural violation; rather, the alleged harm is impairment of an FDCPA-created substantive right to truthful, non-deceptive information in debt collection communications. By enacting the FDCPA, Congress permissibly created a right—the right to be free from false, deceptive, or misleading practices by debt collectors—for which a violation constitutes a particularized injury. *See, e.g.*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–74 (1982) ("A [plaintiff] who has been the object of a misrepresentation made unlawful under [the Fair Housing Act] has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions."); *Bautz v. ARS National Services, Inc.*, --- F. Supp. 3d ---, 2016 WL 7422301, at *7–12 (E.D.N.Y. 2016) (plaintiff has standing to sue on basis of receipt of allegedly false, deceptive, or misleading debt collection communication; extensive discussion); *Everett v. Fin. Recovery Servs., Inc.*, 2016 WL 6948052, at *3–4 (S.D. Ind. 2016) (same). Accordingly, plaintiff here has standing.

### *Failure to State a Claim*

Turning next to the merits of the motion to dismiss, I am guided by the well-established principles governing this Court's consideration of a Rule 12(b)(6) motion. First, the Court must accept as true all factual matter alleged in a complaint and draw all reasonable inferences in a plaintiff's favor. *See Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013). But "'[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

to state a claim to relief that is plausible on its face.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

To state a claim under the FDCPA, plaintiff must allege that she is a "consumer," that defendants are "debt collectors," and that defendants used "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt." 15 U.S.C. § 1692e; *see Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191, 194 (2d Cir. 2015). Defendants dispute only whether as a matter of law the letter's claim about potential tax consequences of a settlement was false, deceptive, or misleading.

Whether a collection letter is false, deceptive, or misleading under the FDCPA must be evaluated from the perspective of the least sophisticated consumer. The hypothetical "least sophisticated consumer" is a "naive" and "credulous" person but also one who possesses a "rudimentary amount of information about the world and a willingness to read a collection notice with some care." *See id.* at 193–94. As the Seventh Circuit has observed, the least sophisticated consumer "isn't a dimwit. She may be uninformed, naïve, and trusting, . . . but she has rudimentary knowledge about the financial world, and is capable of making basic logical deductions and inferences." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009). "If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA—even if it is false in some technical sense." *Id.* at 645–46.

From the viewpoint of the least sophisticated consumer, "collection notices can be deceptive if they are open to more than one reasonable interpretation, at least one of which is inaccurate." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 173 (2d Cir. 2015). Still, "FDCPA protection does not extend to every bizarre or idiosyncratic interpretation of a collection notice[,] and courts should apply the [least sophisticated consumer] standard in a

manner that protects debt collectors against liability for unreasonable misinterpretations of collection notices." *Ibid.*

Defendants' statement in the letter to plaintiff that "this settlement may have tax consequences" is not false. The acceptance of defendants' proposed settlement may result in cancellation of indebtedness, and cancellation of indebtedness in any amount may constitute taxable income. *See* 26 U.S.C. § 61(a)(12); IRS Pub. No. 4731, *Screening Sheet for Nonbusiness Credit Card Debt Cancellation* (2015), *available at* https://www.irs.gov/pub/irs-pdf/p4731.pdf. Because defendants' statement in the letter that "this settlement may have tax consequences" is an accurate statement of the law, it does not violate the FDCPA. *See Everett*, 2016 WL 6948052, at *6 (concluding that identical language is not actionable under the FDCPA).

Plaintiff nonetheless contends that the statement that "this settlement may have tax consequences" is misleading for being "incomplete," because it does not list all the scenarios in which plaintiff may *not* suffer any tax consequences, such as settlement of the interest-only portion of her debt. But even the least sophisticated consumer would not interpret the statement that "this settlement *may* have tax consequences" to mean "this settlement *will* have tax consequences." The least sophisticated consumer standard does not presuppose an inability to read and understand the English language. *See, e.g.*, *Eades*, 799 F.3d at 173 (debt collection notice stating that a debtor "*may* be held liable" did not constitute a false, deceptive, or misleading representation because "even an unsophisticated consumer could not reasonably interpret" the notice as "purporting to recite all relevant . . . considerations"); *Golubeva v. GC Servs. Ltd. P'ship*, 767 F. Supp. 2d 369, 373 (E.D.N.Y. 2010) (FDCPA was not designed to "require debt collectors to disclaim away every possible term and interpretation").

6

To the extent that plaintiff argues that the letter's statement that "this settlement may have tax consequences" is false because FRS knew it would not have to issue a Form 1099-C for cancellation-of-indebtedness income under $600, plaintiff confuses a creditor's tax reporting requirements with an individual's obligation to report taxable income. *See* IRS Pub. No. 4731, *Screening Sheet for Nonbusiness Credit Card Debt Cancellation* (2015), *available at* https://www.irs.gov/pub/irs-pdf/p4731.pdf (while a "creditor is not required to issue a Form 1099-C if the canceled debt is under $600 . . . [,] the taxpayer may be required to report the canceled debt as income regardless of the amount.").

Nor did FRS assert in its letter that it would file a Form 1099-C, or that it would contact the IRS, or any variation thereof. Accordingly, this is not a case where a debt collector has needlessly suggested that it would report settlement of debt information to the IRS. *See, e.g.*, *Balon v. Enhanced Recovery Co., Inc.*, 190 F. Supp. 3d 385, 387 (M.D. Pa. 2016) (statement that "any indebtedness of $600.00 or more, which is discharged as a result of a settlement, may be reported to the IRS as taxable income" violated the FDCPA when no Form 1099-C would be required because the proposed discharge of indebtedness clearly fell under $600). This is also not a case where a debt collector has overstated its own tax reporting requirements. *See, e.g.*, *Carlvin v. Ditech Fin. LLC*, 2017 WL 635151, at *4 (N.D. Ill. 2017) (statement that "[Creditor] is required to report any debt forgiveness to the Internal Revenue Service" is deceptive even in light of proposed settlement in excess of $600 because it fails to list exceptions to this requirement).

Instead of mentioning FRS's own tax reporting requirements at all, the letter sent to plaintiff accurately refers to the possible tax consequences *to plaintiff* for settling on a debt. Not even the least sophisticated consumer would interpret the statement here to deceptively suggest

that defendants were required to or intended to contact the IRS. *See Everett*, 2016 WL 6948052, at *6 (rejecting same argument).

Plaintiff next contends that the letter's reference to potential tax consequences from a settlement creates a "false sense of urgency" and is "meant to make the consumer nervous, worried, or upset," both of which would violate of the FDCPA. *See Rosa v. Gaynor*, 784 F. Supp. 1, 4–5 (D. Conn. 1989) (Cabranes, J.). Statements giving rise to a false sense of urgency generally involve arbitrary deadlines, *see, e.g.*, *Foti v. NCO Fin. Systems, Inc.*, 424 F. Supp. 2d 643, 662–64 (S.D.N.Y. 2006) (words "immediate attention" or similar language, coupled with "the overall tenor of the notice [as] creat[ing] an impression of dire urgency that might confuse the least sophisticated consumer about his/her validation rights"), or vague and alarmingly worded statements or envelopes. *See, e.g.*, *Leyse v. Corp. Collection Servs., Inc.*, 2006 WL 2708451, at *7 (S.D.N.Y. 2006) (hasty, vague voice messages requesting an urgent reply created a false sense of urgency). Here, the letter's reference to potential tax consequences from a settlement does not impose any arbitrary deadlines, nor through vague or ominous language unduly scare the least sophisticated consumer into immediately paying the debt.

Defendants advised plaintiff of settlement options and then truthfully advised plaintiff that such settlement options "may" have tax consequences. It would take a bizarre or idiosyncratic interpretation by the least sophisticated consumer to conclude that this true statement violates the FDCPA. To be sure, the Second Circuit has recently held that the *absence* of a tax statement like the one here does not violate the FDCPA, *Altman*, 786 F.3d at 19, but nothing in *Altman* conversely suggests that the *inclusion* of a tax statement—if it is an accurate

statement of the law, as it is here—violates the FDCPA. Plaintiff has not stated a claim for which relief may be granted.[2]

## CONCLUSION

Defendants' motion to dismiss (Doc. #9) is GRANTED. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven, Connecticut, this 15th day of March 2017.

                                                         /s/ *Jeffrey Alker Meyer*
                                                         Jeffrey Alker Meyer
                                                         United States District Judge

---

[2] To the extent plaintiff belatedly attempts to assert additional FDCPA violations in her opposition to defendants' motion to dismiss, *see* Doc. #12 at 11–12, those allegations are obviously not properly before this Court. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (plaintiff may not use opposition to motion to dismiss as means of adding new claims to complaint). If plaintiff wishes to file an amended complaint, she may file a motion for leave to file an amended complaint, along with the proposed amended complaint, within 7 days of this ruling, but she shall state with particularity in this motion why any amended allegations were not previously set forth in the initial complaint.